IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY STEVENSON, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Case No. 04 C 7990 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| HYRE ELECTRIC COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Beverly Stevenson ("Stevenson" or "Plaintiff") has brought suit against her former employer, Hyre Electric Company ("Hyre" or "Defendant") for violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The parties agree that no material facts are in dispute and have filed cross-motions for summary judgment. Because Plaintiff did not give required notice to Defendant that she was requesting leave, and because Plaintiff cannot show as a matter of law that she was entitled to FMLA leave, Defendant's motion for summary judgment is granted.

**FACTS**

**Plaintiff's Employment**

At the time of her termination, Stevenson had been employed by Hyre as a receptionist and clerical assistant in the purchasing department for approximately eight years. Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Uncontested Material Facts at ¶ 9-10 (hereafter "Pltf.'s Resp. Def. 56.1 at ¶ __").[1] While employed, Plaintiff was a member of the International

---

[1] Plaintiff's Response includes each of Defendant's Uncontested Facts *verbatim*, and the Court intends each reference to include both Defendant's and Plaintiff's statements regarding that paragraph.

Brotherhood of Electrical Workers ("Union"), of which Hyre is also a member. Pltf.'s Resp. Def. 56.1 at ¶¶ 4, 13. Stevenson had never been disciplined or reprimanded for any performance, attendance, or tardiness issues until the events leading to this suit. Defendant's Local Rule 56.1(b)(3) Response to Plaintiff's Local Rule 56.1 Statement of Allegedly Uncontested Facts at ¶ 2. (hereafter "Def.'s Resp. Pltf. 56.1 at ¶ __").

Although the parties dispute whether Plaintiff was an "at-will" employee, Plaintiff agrees that she understood that she could quit or be fired at any time. Pltf.'s Resp. Def. 56.1 at ¶ 12. Hyre had an employment manual that detailed the Family and Medical Leave Policies, and explained that an employee could have no more than three unexcused absences in a 90-day period. Pltf.'s Resp. Def. 56.1 at ¶¶ 20, 26. The parties dispute whether Plaintiff ever received a copy of the "Hyre Employment Manual." Pltf.'s Resp. Def. 56.1 at ¶¶ 18-19.[2] The manual was produced during discovery and is dated 1994, prior to Plaintiff's hiring. Def. Ex. 1.

### Plaintiff's Absence from Work, February 9-17, 2004

On February 9, 2004, around 10:00 a.m., a stray dog entered the warehouse area where Stevenson worked through an open warehouse door. Pltf.'s Resp. Def. 56.1 at ¶ 31. When the dog approached Plaintiff, she felt a pop in her head, developed a flush and a headache, and felt disoriented. Pltf.'s Resp. Def. 56.1 at ¶ 32. Stevenson felt as if she might be having a stroke. Pltf.'s Resp. Def. 56.1 at ¶ 32. Around 12:30 p.m., Plaintiff telephoned the lunch room and spoke with Hay Lee Yuen ("Yuen"), the accounting manager, and stated that she did not feel well and was going

---

[2] The only support for Plaintiff's position is her testimony in her deposition that she never received the manual. Stevenson Dep. at 460.

home. Pltf.'s Resp. Def. 56.1 at ¶ 36. Plaintiff did not see a doctor or go to the hospital on the day of the 9th. Pltf.'s Resp. Def. 56.1 at ¶ 37.

On February 10, 2004, Stevenson left a voicemail for her supervisor, Mary Cicchetti ("Cicchetti"), stating that she "wasn't feeling well and . . . wouldn't be in today." Pltf.'s Resp. Def. 56.1 at ¶ 38. On that same day, she went to the hospital for an unrelated medical test. Pltf.'s Resp. Def. 56.1 at ¶ 40. While at the hospital, she did not see her primary care physician ("Dr. Liszek"). Pltf.'s Resp. Def. 56.1 at ¶ 42.

The next day, February 11, 2004, Plaintiff came to the office at 7:05 a.m. to speak with Hyre's president, Charles Guest ("Guest"), about stray animals in the workplace. Pltf.'s Resp. Def. 56.1 at ¶ 44, Stevenson Dep. at 172-81. During that meeting, Stevenson did not say anything to Guest about her medical problems. Pltf.'s Resp. Def. 56.1 at ¶ 45. At 7:30 a.m., however, she told Cicchetti that "she could not work" and left Hyre. Pltf.'s Resp. Def. 56.1 at ¶¶ 48-49.

That afternoon, on February 11, Plaintiff filed a complaint with OSHA regarding stray animals at Defendant's workplace. Pltf.'s Resp. Def. 56.1 at ¶ 51. Plaintiff also went to the emergency room, where she was examined by a doctor for complaints of headaches, insomnia, loss of appetite, and an "emotionally stressful incident at work on Monday,". Pltf.'s Resp. Def. 56.1 at ¶ 53. The doctors ordered an EKG test and a CAT scan, both of which returned normal. Stevenson was discharged with a diagnosis of anxiety and was precribed a dose of Ativan to calm her nerves. Pltf.'s Resp. Def. 56.1 at ¶¶ 59-61.

On February 12, 2004, Stevenson left a message for Cicchetti stating that she was ill and would not be in that day. Pltf.'s Resp. Def. 56.1 at ¶ 70. Also on February 12, she met with a Union representative, Richard Sipple ("Sipple"), to discuss the incident on February 9th involving the stray

3

dog. Pltf.'s Resp. Def. 56.1 at ¶ 72-73. During the meeting with the Union representative, Plaintiff mentioned that she was "off sick" but did not give specifics about her health or her medical condition. Pltf.'s Resp. Def. 56.1 at ¶ 74. On the mornings of February 13 and February 16, a Friday and a Monday respectively, Plaintiff called in sick to Cicchetti but gave no specifics about her condition. Pltf.'s Resp. Def. 56.1 at ¶¶ 78, 88.

### The Events of February 17-24

On February 17, Plaintiff went to work at 7 a.m. Pltf.'s Resp. Def. 56.1 at ¶ 92. Cicchetti had boxed up the contents of Plaintiff's desk and moved the contents to another room, the same room as she had occupied during her first years as an employee at Hyre. Pltf.'s Resp. Def. 56.1 at ¶ 93-94. Cicchetti moved Plaintiff's office as an accommodation to Stevenson's fear of stray animals. Pltf.'s Resp. Def. 56.1 at ¶ 95. After working a few hours, Stevenson left Hyre at 10:15 a.m. after telling Cicchetti that she was not well. Pltf.'s Resp. Def. 56.1 at ¶¶ 92, 104. Plaintiff left copies of her February 11 emergency room record on Yuen's desk, but did not otherwise tell anyone where she had been for the previous eight days. Pltf.'s Resp. Def. 56.1 at ¶¶ 102, 105, 106.

After Stevenson left Hyre on February 17, Guest gave Cicchetti permission to change the locks on the doors of Hyre's office. Pltf.'s Resp. Def. 56.1 at ¶¶ 108-09. Also on February 17, Guest sent a letter via Fed Ex to Plaintiff's home. Pltf.'s Resp. Def. 56.1 at ¶ 113. The letter stated in relevant part:

> You no longer have any accrued vacation or sick leave available. Therefore, any additional leave must be governed by Hyre's Family and Medical Leave Policy. Under the provisions of Hyre's Employment Manual, you are required to obtain a medical certification from your physician or other health care provider for a serious health condition FMLA leave. If you do not do so within fifteen (15) days from the commencement of your leave or by Tuesday, February 24, 2004, your absences will be deemed unexcused and you will be terminated from Hyre's employ.

4

Pltf.'s Resp. Def. 56.1 at ¶ 116. Plaintiff did not call Defendant for any clarification of the letter. Pltf.'s Resp. Def. 56.1 at ¶ 147.

On February 18, Plaintiff called in sick to work. Pltf.'s Resp. Def. 56.1 at ¶ 117. She went to see Dr. Liszek that afternoon, having made an appointment either February 13 or 14. Pltf.'s Resp. Def. 56.1 at ¶ 118. Plaintiff had not told anyone at Hyre that she had the appointment. Pltf.'s Resp. Def. 56.1 at ¶ 119. When Plaintiff met with Dr. Liszek, it was the first time that she told Dr. Liszek about her medical concerns. Pltf.'s Resp. Def. 56.1 at ¶ 121. Plaintiff did not bring the February 17 letter from Hyre to Dr. Liszek. Pltf.'s Resp. Def. 56.1 at ¶ 150. Dr. Liszek gave Plaintiff a prescription for a sleep aid, and told her to return for another appointment on February 20. Pltf.'s Resp. Def. 56.1 at ¶¶ 130, 136, 137. The parties dispute whether Dr. Liszek told Plaintiff to stay home between February 18 and 20, but the parties agree that Plaintiff did not communicate any such instruction to Defendant. Pltf.'s Resp. Def. 56.1 at ¶¶ 139-140.

On February 20th, Plaintiff met with Union representatives Sipple and newly-assigned representative Kenneth Anderson. Pltf.'s Resp. Def. 56.1 at ¶ 156. Plaintiff recounted the story she had told to Sipple on February 12, and gave the representatives documentation from her emergency room visit. Pltf.'s Resp. Def. 56.1 at ¶ 159-160. None of the three people present at the meeting remember discussing the letter of February 17. Pltf.'s Resp. Def. 56.1 at ¶ 164.

Also on February 20th, Plaintiff returned to Dr. Liszek for a follow-up visit. Pltf.'s Resp. Def. 56.1 at ¶ 171. She saw Dr. Mahan, an associate of Dr. Liszek, and reported that her anxiety, sleeping difficulties, and headaches had improved. Pltf.'s Resp. Def. 56.1 at ¶ 172. Plaintiff indicated that she wanted to return to work but that she needed a doctor's note to do so. Pltf.'s Resp. Def. 56.1 at ¶ 173. Dr. Liszek saw Plaintiff briefly, and wrote a note excusing her absence from

February 9-20 and stating that she could return to work on February 23. Pltf.'s Resp. Def. 56.1 at ¶¶ 175-78. The parties agree that this note (the "First Doctor's Note") was not intended to convey that Dr. Liszek had instructed Plaintiff not to work those days; it merely established an excuse for not working. Pltf.'s Resp. Def. 56.1 at ¶ 179. The parties also agree that the First Doctor's Note was not intended to establish an FMLA qualifying medical condition. Pltf.'s Resp. Def. 56.1 at ¶ 182.

On February 23rd, Plaintiff did not return to work. Stevenson claims that she did not return because she had been instructed by Sipple and Anderson that the Union did not want her to return to work. Pltf.'s Resp. Def. 56.1 at ¶ 184. Sipple testified that he believed he told her she could not return to work until she had a "doctor's release." Sipple Dep. at 65. On February 23, Union representatives Sipple and Anderson met with Hyre employees Guest and Jim Palm to discuss the safety risk that they believed Plaintiff presented to Hyre's employees. Pltf.'s Resp. Def. 56.1 at ¶ 191. Later in the day on February 23, Plaintiff faxed a copy of the First Doctor's Note to the Union representatives. Pltf.'s Resp. Def. 56.1 at ¶ 194. The Union faxed it to Hyre. Pltf.'s Resp. Def. 56.1 at ¶ 195.

On February 24th, Plaintiff called Cicchetti to say that she was not coming in to work that day per the union's instructions. Pltf.'s Resp. Def. 56.1 at ¶ 200. She changed her mind later in the morning and arrived at work at approximately 10 a.m. Pltf.'s Resp. Def. 56.1 at ¶ 202. When Plaintiff arrived, she discovered that the locks had been changed by Defendant. Def.'s Resp. Pltf. 56.1 at ¶ 21. Plaintiff met Guest at work, and gave him the First Doctor's Note. Pltf.'s Resp. Def. 56.1 at ¶ 204. Guest did not accept the note and Plaintiff took her belongings and left. Pltf.'s Resp. Def. 56.1 at ¶¶ 204, 207. Guest told Anderson that the First Doctor's Note was not sufficient; Anderson told this to Stevenson.

6

Plaintiff went back to Dr. Liszek and again asked for certification to return to work. Pltf.'s Resp. Def. 56.1 at ¶ 217. She did not mention the FMLA to Dr. Liszek, nor did she ask Dr. Liszek what kind of certification she needed. Pltf.'s Resp. Def. 56.1 at ¶¶ 218-19, 234. Dr. Liszek wrote a second note (the "Second Doctor's Note") excusing her from work through February 24. Pltf.'s Resp. Def. 56.1 at ¶ 220; Liszek Dep. at 162. The parties agree that the Second Doctor's Note was not intended to certify that Plaintiff had a medical condition that qualified for the FMLA. Pltf.'s Resp. Def. 56.1 at ¶ 222. Plaintiff faxed the Second Doctor's Note to the Union on the evening of February 24 with a cover letter explaining that Dr. Liszek would answer questions and complete additional forms. Pltf.'s Resp. Def. 56.1 at ¶ 223-24. Neither Anderson nor Plaintiff informed Defendant of Dr. Liszek's offer. Pltf.'s Resp. Def. 56.1 at ¶ 226-28.

### Plaintiff's Termination

On February 25, the Union faxed the Second Doctor's Note to Defendant. Pltf.'s Resp. Def. 56.1at ¶ 236. From February 25 through March 9, Plaintiff had no conversations with any representatives of Hyre. Pltf.'s Resp. Def. 56.1 at ¶ 247. On March 9, Hyre sent Plaintiff a letter stating that she had been terminated effective February 25. Pltf.'s Resp. Def. 56.1 at ¶¶ 254-55.

### STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## DISCUSSION

The FMLA allows an employee to take up to twelve weeks of leave, unpaid, for a "serious health condition" suffered by an employee or a member of an employee's family. 29 U.S.C. § 2612(a)(1)(D). Because the FMLA creates substantive rights, the employee bears the burden of showing that he or she is entitled to FMLA leave. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). To succeed on an FMLA violation claim, a plaintiff must be able to show that: (i) she was an eligible employee under the FMLA, (ii) the defendant was an employer under the FMLA, (iii) she was entitled to leave under the FMLA, and (iv) the defendant improperly denied her leave under the FMLA. *See* 29 U.S.C. §§ 2611, 2615; *Dey v. Marshall Roofing*, 2002 WL 773989 at *2 (N.D. Ill. 2002).

The parties do not dispute that Plaintiff was an employee of Defendant as defined under the FMLA, and that Defendant was an employer under the FMLA. The parties dispute whether Plaintiff

was "entitled to leave" under the FMLA, 29 U.S.C. §§ 2601 (b)(2). Defendant moves for summary judgment on two alternative grounds regarding entitlement. First, Defendant alleges that Plaintiff is not entitled to FMLA leave because there is no genuine issue of material fact that Plaintiff did not fulfill her threshold obligation to notify her employer that she needed leave. In the alternative, Defendant argues that even if she did request leave, Plaintiff was not entitled to FMLA leave because she did not have a "serious health condition" that made her unable to work.

Plaintiff in turn moves for summary judgment that she was entitled to FMLA leave because she had a "serious health condition" and gave constructive notice to Defendant, and because Defendant violated the statute by failing to: (1) provide Plaintiff with the required 15 days in which to provide medical certification of her qualifying condition; (2) allow Plaintiff time to cure any defects in her certification; and (3) properly advise Plaintiff of her rights under FMLA. Because there is no genuine issue of material fact that Plaintiff's communications with Defendant did not provide notice of request for leave, and because there is no genuine issue of material fact that Plaintiff did not have an FMLA qualifying condition, the Court grants summary judgment for Defendant.

**A. Request for FMLA leave**

Under the FMLA and accompanying regulations, an employee must give some form of notice that the employee intends to seek FMLA-qualifying leave. *See* 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303. A request for leave need not specifically state that the leave is FMLA leave; the employee need not even know that FMLA rights exist. *See* 29 C.F.R. § 825.303(b); *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006). Although the employee need not name the statute, the employee "must provide enough information to suggest that his health

condition could be serious." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) *citing Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1009 (7th Cir. 2001). An employee's duty to grant FMLA leave is not triggered if the employee fails to give proper notice that the leave is needed. *Collins*, 272 F.3d at 1008.

Title 29 C.F.R. § 825.303 addresses those situations in which a medical condition requiring leave occurs suddenly, such that an employee cannot provide advance notice of a request for FMLA leave. Under such circumstances, § 825.303 requires notice be given "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "As soon as practicable" may be a delay of a day or two; however, it does not allow an employee to neglect to give notice of a request for FMLA leave. *See Collins,* 272 F.3d at 1008; *see also Phillips*, 450 F.3d at 311 (plaintiff had to give notice within a day or two when there was no reason that giving notice was not feasible). As stated by the Seventh Circuit, the requirement of timely notice is fundamental to the FMLA's purpose of balancing the needs of employees and employers:

> Conditioning the right to take FMLA leave on the employee's giving the required notice to his employer is the quid pro quo for the employer's partial surrender of control over his work force. Employers do not like to give their employees unscheduled leave even if it is without pay, because it means shifting workers around to fill the temporary vacancy and then shifting them around again with then absentee returns. The requirement of notice reduces the burden on the employer.

*Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 951-52 (7th Cir. 2004); *see also Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) ("Notice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help."). In keeping with this purpose, merely "requesting leave" is not sufficient to satisfy the notice requirement; the employee "must give the employer a reason to believe that he's entitled to it." *Aubuchon*, 359 F.3d

10

at 952 ("If you have brain cancer but just tell your employer you have a headache, you have not given the notice that the [FMLA] requires.") The information must be sufficient to indicate the presence or possibility of a serious medical condition. *Id.*; *see also Burnett v. LFW, Inc.*, 2005 WL 3312573 at *2 (N.D. Ill. Dec. 7, 2005).

In this case, Plaintiff admits that she called into work each of the business days that she missed between February 9 and February 20 and announced that she would be absent on the day that she called. On each of those days, Plaintiff told her supervisor at Defendant that she was "sick" or "not well." While Plaintiff objects that the record does not support that she "only" said these phrases, the record does not reflect any other supported statements to Defendant regarding Plaintiff's reasons for her absence. Plaintiff never told her supervisor Ciachetti, or any other employee at Hyre, any of the details about her health problems; nor did she ever state that she would be absent for more than the day in question. Being "sick" or "ill" does not imply a "serious health condition" under the FMLA for notice purposes. *Collins.*, 272 F.3d at 1008; *see also Sechrist v. Harris Steel Co.*, 2005 WL 3216752 at *4 (N.D. Ill. Nov. 30, 2005). Additionally, Plaintiff called in sick for each individual day, but never gave Defendant any indication of the amount of time she would be out, thereby prohibiting her employer from finding a replacement for her. *See Kramarski v. Village of Orland Park*, 2002 WL 1827637 at *8 (N.D. Ill. Aug.9, 2002) (calling in "sick" each day to report absence only for that day, without specifying the reason or duration of leave held insufficient notice to trigger FMLA leave); *see also Collins*, 272 F.3d at 1008 ("[E]mployers are still entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work.")

Even setting aside the first few days Plaintiff called in sick to Defendant, Plaintiff does not dispute that she personally came to the office on February 11 and had a lengthy conversation with Defendant's president, Guest, about stray dogs in the workplace. Pltf.'s Resp. Def. 56.1 at ¶¶ 44-49. Plaintiff had ample opportunity at that time to say anything to Guest about her illness, her treatment, or her estimated time off. Plaintiff returned to work again on February 17, and again admits that she did not have any conversation with anyone at Defendant as to her sickness, why she had been out of work for the past week, or when she planned to return. Pltf.'s Resp. Def. 56.1 at ¶¶ 105-06. Plaintiff admits that at no time during her absence did she give any explanation to employees of Hyre.

Plaintiff does not contest that she failed to give direct notice to Hyre of her need for leave. Instead, she relies upon the argument that she gave "constructive notice" of her need for leave to Hyre, because her behavior was suddenly erratic and drastically different from her previous demeanor to such an extent that her employer should have realized she might have a serious medical condition requiring leave. Plaintiff cites to *Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir. 2003) in support of her position that a drastic change in the behavior of an employee with a lengthy positive track record can be constructive notice that an FMLA-qualifying medical condition has developed. In *Byrne*, a long-time employee with no prior history of negative behavior suddenly began to sleep and dawdle while on the job, then stopped coming to work, and then ceased all communication with his employer. *Id.* at 380. Shortly after the employer terminated him for unexcused absences, it became clear that the employee had been diagnosed with severe depression, hallucinations, and anxiety disorder culminating in a suicide attempt. *Id.* The *Byrne* court found that a genuine issue of material fact existed as to whether the employee was capable of giving notice, and

that the drastic change in personality could permit a jury to find that the change in behavior was enough to notify an employer of the need for FMLA leave. *Id.* at 381-82.

The plaintiff in *Byrne* was completely unable to communicate, and the FMLA-qualifying condition was itself the source of his inability to communicate. *Id.* at 381 (noting that medical evidence in the record would allow a jury to conclude that Byrne "was powerless to communicate his condition effectively"). In contrast, Stevenson came to work on more than one occasion to speak with her supervisors and expressed her concerns to them. The uncontested facts supports that she maintained an ability to relate her symptoms and feelings at length during her two medical visits to Dr. Liszek. The *Byrne* exception is not supported by the facts which show that Stevenson had the ability to communicate fully with her employer. *See Burnett*, 2005 WL 3312573 at *3 (distinguishing *Byrne* because plaintiff's "condition had no effect on his capacity to provide his employer with sufficient information to trigger the employer's obligations under the FMLA."). Because Plaintiff did not give the required notice under the FMLA, her claim against Defendant fails.

### B.  Entitlement to FMLA leave

Even assuming that Plaintiff's communications to Defendant were sufficient to be "constructive notice" that FMLA leave was requested, Plaintiff has not created a genuine issue of material fact as to whether she had a "qualifying" condition under the FMLA. An employee is entitled to leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see also Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998). If either of these elements are not met, then the employee is not entitled to FMLA leave. *Id*.

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The regulations promulgated by the Secretary of Labor permit the continuing treatment test for a "serious health condition" to be satisfied if the employee shows:

> A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i). Whether an employee has a "serious health condition" as defined in the FMLA is a matter of law. *Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 499 (7th Cir. 1999) ("Whether an illness or injury constitutes a "serious health condition" under the FMLA is a legal question that an employee may not sidestep in the context of summary judgment merely by alleging his condition to be so.").

Plaintiff in this case cannot provide the required information from a medical professional that she was incapacitated and unable to perform her work or daily activities. Plaintiff has alleged two or more treatments by a health care provider, as she went to the emergency room on February 11, and then went to see Dr. Liszek on February 18 and 20. But Dr. Liszek did not testify that Plaintiff was unable to work; and Plaintiff does not dispute that the Doctor's Notes from Dr. Liszek were not

14

intended to convey that the doctor had instructed Plaintiff not to work. Pltf.'s Resp. Def. 56.1 at ¶¶ 179. In fact, Plaintiff specifically admits that the Doctor's Notes were not intended to suggest that Plaintiff had an FMLA-qualifying condition. Pltf.'s Resp. Def. 56.1 at ¶¶ 182, 222. While Plaintiff states that her anxiety made her unable to work, there is not dispute that she did not tell anyone about the effect of her medical problems on her work until after she had been terminated - indeed, until she commenced this litigation. *Compare Bell v. Jewel Food Store*, 83 F. Supp. 2d 951, 959 (N.D. Ill. 2000) (plaintiff not "incapacitated" to survive summary judgment when plaintiff provided no medical testimony of inability to work and relied solely on self-serving statements that he was unable to do anything during his absence).

In addition to the evidence from Dr. Liszek, Plaintiff's own testimony demonstrates that she was not incapacitated. *See Haefling*, 169 F.3d at 500 (plaintiff not incapacitated when he testified that he was able to take care of himself); *see also Rivero v. United Airlines, Inc.*, 2005 WL 3159244 at * 12 (N.D. Ill. Nov. 22, 2005) (plaintiff not incapacitated when he called in sick but drove himself home). Under the "continuing treatment" prong of a "serious health condition," an employee must show that she was incapacitated for three consecutive days. 29 C.F.R. § 825.114. Plaintiff testified that her symptoms began on February 9, causing her to leave early that day and to miss work on February 10. But she returned to work on February 11 to discuss dogs in the workplace with her supervisor. She also placed a call to OSHA that afternoon to file a complaint about the workplace environment. On February 12, she did not go to work, but she attended a meeting at the Union offices to discuss the problem of animals at Hyre's workplace. The following Tuesday, February 17, she went back to work at Hyre for a few hours, but left mid-morning without explanation. On February 20, she attended another meeting with the Union. Pltf.'s Resp. Def. 56.1 at ¶ 156. Plaintiff

15

drove herself to and from work and meetings. Plaintiff has not shown that she had a "serious medical condition" as defined by the FMLA, and therefore cannot meet her burden to show that she was entitled to leave under the statute.

### C. Plaintiff's Claims regarding Hyre's Violations of FMLA Policy

Plaintiff has cross-moved for summary judgment in this case, alleging that Hyre violated FMLA policy through: (i) flaws in its February 17th letter, (ii) failure to allow Plaintiff to cure certification, and (iii) failure to inform Plaintiff of her FMLA rights. An employee's duty to give notice is a threshold requirement to an employer's decision to grant or deny FMLA leave. *Phillips,* 450 F.3d at 311, *citing Aubuchon*, 359 F.3d at 951. Plaintiff's first two arguments therefore need not be addressed in light of the Court's ruling that Plaintiff did not give notice or demonstrate that she had a "serious medical condition."

As to Plaintiff's third claim, that Defendant failed to inform Plaintiff of her rights under the FMLA pursuant to § 825.301(a)(2), the Complaint filed by Plaintiff in this case does not allege that Defendant failed to inform Plaintiff of her FMLA rights. Plaintiff did not amend her Complaint, or seek leave to amend it. Summary judgment "is too late in the day to be adding new claims." *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997); *accord Zeidler v. A&W Restaurants*, 2006 WL 1898056 at *8 (N.D. Ill. July 6, 2006). Without knowing the claims against it, Defendant cannot conduct discovery to address those claims. For example, Plaintiff claims in her motion for summary judgment that no one ever gave her the Hyre Employment Manual, yet portions of that manual are quoted in the text of the Complaint, and failure to inform Plaintiff of her FMLA is not alleged. The parties now dispute whether certain documents were turned over in discovery, and dispute who possessed those documents, but on the basis of the claims as pled, those details were not in dispute.

Additionally, the limited facts in the record do not create a genuine issue of fact as to whether Defendant complied with the initial notice requirements of the FMLA. To comply with the notice requirement, an employer must "post and keep posted, in conspicuous places on the premises of the employer where notices to employees. . . are customarily kept. . . a notice . . .to be prepared or approved by the Secretary [of Labor]" that describes the terms of the FMLA. 29 U.S.C. § 2619. Plaintiff admits that she passed the government posters on "wage, labor wage stuff" and "EEOC stuff" on the way to the bathroom approximately four times a day. Stevenson Dep. at 95-96. Guest testified that if a poster were required by federal law, it would have been posted with the other federally mandated posters on the way to the restroom. Guest Dep. at 142.[3] Plaintiff provides no support for her statement that she did not know about the FMLA or the Hyre Employment Manual, and an unsupported self-serving statement alone is insufficient to survive summary judgment. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).

**CONCLUSION**

Because the facts before the Court indicate that there is no genuine issue of material fact as to whether Plaintiff gave Defendant the required notice that she sought FMLA leave, and because Plaintiff cannot meet her burden to show that she had a "serious medical condition" as defined in

---

[3]Additionally, other courts in this district have found that the requirement to post the Secretary of Labor poster in a conspicuous location set forth in 29 U.S.C. § 2619(a) does not create a private right of action, as subsection (b) of the same section makes any violation of subsection (a) punishable by a $100 fine for each violation. *See Holmes v. Brd. of Educ. of West Harvey*, 2006 WL 1843393 at * 13 (N.D. Ill. June 30, 2006); *Blumenthal v. Murray*, 946 F. Supp. 623, 627 (N.D. Ill. 1996).

the FMLA, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment on all counts is granted.

So Ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 24, 2006